IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUCKWEED, USA, INC., | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.: 15-5387-RK |
| RUDOLPH BEHRENS, et al., | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT ABRAHAM'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff Duckweed USA, Inc. ("DWUSA"), through its undersigned counsel, submits the following as its Memorandum of Law in opposition to defendant Edward Abraham's ("Abraham") Motion to dismiss the Complaint ("Motion"):

**INTRODUCTION**

The Motion is, for the most part, a "one trick pony." Incanting *Ashcroft v. Iqbal* time and again like a shibboleth, Abraham asserts that DWUSA has failed to allege *facts* that, directly or inferentially, support its claims. As explained below, this is simply not the case, and the Motion should be denied.

**COUNTERSTATEMENT OF FACTS**

On July 6, 2010, the patent-in-suit, United States Patent No. 7,750,494 BI (the "494 Patent"), was issued by the United States Patent and Trademark Office (the "PTO"). (Complaint, par. 14) Defendant Rudolph Behrens is listed in the 494 Patent as an "inventor"

1

and as the "assignee." (Id., par. 27.) Certain processes and technologies covered in the Patent (which Duckweed calls Hydrodynamic Reformation, or "HDR") can produce a cost effective, clean, and renewable petroleum oil substitute from algae, waste water or vegetable oils. (Complaint, pars. 14-16.) On or about October 26, 2013 Behrens gave DWUSA an exclusive license (the "License") to develop, market and license commercial synfuel feedstock facility(s), utilizing the patented processes and technologies in the 494 Patent. (Complaint, pars, 28-29.)

Since obtaining the License, DWUSA's primary focus has been to develop and construct a commercial synfuel feedstock facility at a site in Winslow Township, (the "Winslow Project"), and a facility at the Sparta Waste Water Treatment facility in Sparta, Georgia (the "Sparta Project") featuring the HDR process. In addition, DWUSA developed a relationship with Rutgers University's "Aquaculture Innovation Center for Environment and Natural Resources," in Cape May, New Jersey, and for the past year has been developing and constructing a demonstration site at the Rutgers Center to show the HDR process in continuous operation to investors (the "Rutgers Project"). The Rutgers Project is critical to DWUSA's efforts to attract the investment funding that is needed to construct and operate the Winslow and Sparta Projects. (Complaint, par. 31.)

In January 2015, DWUSA began to lay out the demonstration site for the Rutgers Center and to push for funding. (Complaint, par. 45.) Michael Rigolizzo, DWUSA's President and CEO, was introduced to Defendant Joseph Kearney, who told Rigolizzo that

he had many contacts in the investing community and could assist DWUSA attract funding. (Complaint, par. 46.) Kearney set up a meeting between Rigolizzo and Abraham, the result of which was that, in March, 2015, Abraham (through his company EPA Marketing Management, Inc.) loaned DWUSA $45,500 to "construct[] a prototype of the Linear Venturi Kinetic Nozzle Synfuel Production System" for the Rutgers Project. (Complaint, par. 49.) DWUSA went to work immediately and, by June 17, 2015, the demonstration units for the Rutgers Project was constructed and ready to be made operational. All that was needed was for Behrens to deliver critical pump/nozzle assemblies and the "artificial intelligence" needed to operate them. (Complaint, par. 51.)

On June 19, 2015, Rigolizzo and Stephany Longo (also a DWUSA principal) each received an email from Behrens stating that he was "withdrawing from [DWUSA]" and "nullifying" the License. (Complaint, par. 54.) Behrens went on to claim that defendant B.E.A.R. Oceanics ("Bear"), not DWUSA, had made the agreement with Rutgers to demonstrate *its* (BEAR's) "patented technologies" – i.e., the technologies that DWUSA has an exclusive license to commercialize – to "the world". (Complaint, par. 54.) ***Upon information and belief, Abraham and Kearney, together with Behrens, are principals in BEAR.*** (Complaint, par. 6.)

Following Behrens' email, Behrens and Kearney (acting on his own behalf and on behalf of Abraham) each communicated on multiple occasions by email and by telephone with DWUSA investors James McMonagle and Frank Marx to, among other things: (i)

3

disparage Rigolizzo, calling him a liar and a thief, (ii) ***make clear that, together with Abraham, they would install the pump and nozzle assemblies and artificial intelligence – which Behrens has withheld and refused to deliver to DWUSA – in order to make the Rutgers site operational and present it "to the world" as a BEAR project***; (iii) ***make clear that, together with Abraham, they intended to pursue the Sparta, Georgia opportunity through BEAR once the Rutgers site was operational***; and (iv) solicit DWUSA's investors away from DWUSA. (Complaint, par. 58.)

By way of example, attached hereto as Exhibit A is an email from Kearney to McMonagle and Marx, dated June 29th, in which, among other things, Kearney states that he is communicating on Abraham ("Eddie's) behalf and suggesting that they join with Behrens ("Rudy") to "resolve" the fact that the Rutgers Project was still not operational – which situation was the result, of course, of Behrens' actions, as fomented by Abraham and Kearney.

Further, attached hereto as Exhibit B is an email from Kearney to Behrens, copying McMonagle and Marx, in which he: (i) reaffirms that he is acting on Abraham's behalf, (ii) accuses DWUSA of a "gross mismanagement of funds and incompetence"; (iii) states that Abraham is "on board to investigate ways to participate with you (Behrens) in the development of your technologies going forward" in light of the "untenable DWUSA situation; and (iv) concludes by stating "I remain ready to explore existing and/or new opportunities with you and BEAR Oceanics."

4

*Moreover, on September 4, 2015, Rigolizzo received a call from Abraham, who confirmed the alliance between himself and Behrens by bragging that the algae tanks at the Rutgers site had been filled and were growing algae, that the LVKN pump and nozzle assemblies were about to be installed, and that the demonstration units would then be fully operational.* (Complaint, par. 59.)

The clear inference that can reasonably be drawn from these allegations -- and in particular from the allegations contained in paragraphs 59 and 59 of the Complaint -- is that at some point after making the loan to DWUSA, Abraham (and Kearney) recognized and seized an opportunity, by supporting Behrens' patent infringement, breach of the License and breach of the fiduciary duties owed to DWUSA, to attempt to kill DWUSA, step into its shoes, and steal its opportunities.

## ARGUMENT

### 1. Rule 12(b)(6) Motion to Dismiss Standard

As a threshold matter, "in deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Lee v. City of Philadelphia*, 2015 U.S. App. LEXIS 17466, *3 (3d Cir. Oct. 5, 2015), quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Cargroup Holdings LLC v. Williams*, 2015 U.S. Dist. LEXIS 157632, *5 (E.D. Pa. Nov. 13, 2015).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007), meaning enough in the way of factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoting *Twombly*, 550 U.S. at 556. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013). A plaintiff is "not required to establish the elements of a prima facie case; she merely needs to put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Twillie v. Erie Sch. Dist.*, 575 Fed. Appx. 28, 2014 U.S. App. Lexis 15117, *7 (3d Cir. Aug. 6, 2014), quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

A complaint "does not require 'detailed factual allegations,' but it demands more than an unadorned, 'the-defendant-unlawfully-harmed-me accusation'." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). A Rule 12(b)(6) motion will be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Booker v. Nutter,* 2014 U.S. Dist. LEXIS 135053, *8-9 (E.D.Pa. Sept. 14, 2014), *quoting Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). "The issue is not whether a plaintiff will ultimately prevail but

6

whether the claimant is entitled to offer evidence to support the claims." *Twombly*, 550 U.S. at 563 n.8, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### 2. DWUSA States a Claim Against Abraham in Count I of the Complaint for Indirect Patent Infringement

Abraham acknowledges that a plaintiff states a claim for indirect patent infringement when he establishes that: (i) there has been direct infringement, and (ii) that the indirectly infringing defendant encouraged the direct infringer's unlawful conduct. Defendant's Brief, p. 7, citing *Global Tech-Appliances, Inc. v. SEB S.A.*, ___ U.S. ___, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011) and *DSU Medical corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*).

Abraham does not dispute that the Complaint establishes a claim against Behrens and BEAR (in which Abraham and Kearney are alleged, upon information and belief, to have an interest) for direct infringement by, among other things, misappropriating the Rutgers Project after DWUSA had completed its construction and was awaiting installation by Behrens of the critical nozzle/pump assemblies and artificial intelligence needed to run them on a continuous basis.

With that as predicate, the allegations in the Complaint – and in particular, those at paragraphs 59 and 60 – allege specific *facts* that support DWUSA's allegation that Abraham and Kearney joined forces with Behrens and BEAR in an effort to hijack the Rutgers site and, moreover, that they have plans underway to steal the Sparta Georgia opportunity as well. As a result, this case is distinguishable from *InterMetro Indus. Corp. v. Capsa Solutions,*

*LLC,* 50 F. Supp. 3d 657 (M.D. Pa. 2014) (cited by Abraham), where the complaint under review "simply recite[d] a series of conclusory statements devoid of 'factual allegations'," most of which "simply restate[d] the elements of indirect infringement claims ..." *Id.,* at 365.

In sum, the Motion, as it pertains to Count I of the Complaint against Abraham for indirect patent infringement, should be denied.

### 3. DWUSA States a Claim Against Abraham in Count III of the Complaint for Tortuous Interference With Contract

Abraham tacitly acknowledges the contractual relationship between Behrens and DWUSA, and that Behrens breached that relationship (for purposes of the Motion, in any event). Abraham argues, however, that DWUSA cannot satisfy the element of a tortuous interference claim that requires "purposeful action to harm the contractual relationship" by the defendant, contending that DWUSA has pleaded only "boilerplate, bald-faced conclusions without providing a single factual averment" to support the claim.

Abraham is demonstrably incorrect. Paragraphs 58 (alleging that Kearney acted on Abraham's behalf in communicating with DWUSA's investors) and 59 (alleging a call from Abraham to Rigolizzo that unmistakably evidences Abraham's involvement in defendants' attempt to hi-jack the Rutgers Project, which Abraham studiously) contain more than sufficient, specific factual allegations – not boilerplate conclusions – to link Abraham and Kearney to Behrens' breach of DWUSA's exclusive license. As a result, the Motion, as it pertains to Count I of the Complaint against Abraham for indirect patent infringement, should be denied.

8

### 4. DWUSA States a claim Against Abraham in Count VII of the Complaint for Aiding and Abetting Behrens' Breach of Fiduciary Duty

Similar to the tortuous interference claim, Abraham apparently acknowledges the fiduciary relationship between Behrens and DWUSA, and that Behrens breached his fiduciary duties owed to DWUSA (again, at least for purposes of the Motion). However, Abraham argues – incorrectly – that DWUSA has not stated a claim against him because, in his view, DWUSA has pleaded "no factual support ... that Abraham aided and abetted" such a breach. Defendant's Brief, p. 12.

In order to aid and abet a breach of fiduciary duty, a defendant must (i) have knowledge of the breach, and (ii) render substantial assistance to effect it. *Id.,* pp.11-12. Paragraphs 58 and 59 allege specific facts that directly establish Abraham's knowledge of and assistance in (***indeed, participation in***) Behrens' breach of the fiduciary duties that he owed to DWUSA (by, among other things, attempting to steal DWUSA's opportunities at the Rutgers and Sparta Projects, and attempting to poison its relationship with and siphon away its investors). As a result, the Motion, as it pertains to Count VII of the Complaint against Abraham, should be denied.

### 5. DWUSA States a claim Against Abraham in Count VIII of the Complaint for Civil Conspiracy to Breach of Fiduciary Duty[1]

The elements of a cause of action for civil conspiracy are: (i) a combination of two or more persons acting with a common purpose to do an unlawful act (or to do a lawful act

---

[1] Count VIII was incorrectly captioned Civil Conspiracy to Breach the License Agreement. As Abraham acknowledges, the allegations in Count VIII make clear that the claim is for conspiracy to breach fiduciary duties.

by unlawful means), (ii) an overt act in pursuance of the common purpose, and (iii) damages. *E.g., Smith v. Wagner*, 588 A.2d 1308, 1311-12 (Pa. Super. 1991) (also cited by Abraham).

Abraham argues that DWUSA "has failed to allege any facts showing that Abraham engaged in any overt act in pursuit of a common purpose." Defendant's Brief, p. 13. Once again, Abraham ignores paragraphs 58 and 59 of the Complaint, which establish a common purpose, and concerted, joint action, between and among Abraham, Behrens and Kearney to kill DWUSA, put on its shoes, and steal its opportunities. Moreover, and in any event -- as defense counsel should know -- to establish a conspiracy it is **not** necessary that a plaintiff allege or prove that **all** conspirators committed an overt act in pursuance of the common purpose. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) ("Here, the Morganroths have alleged a number of overt acts committed by one or more of the conspirators in furtherance of the conspiracy, many of which would hypothetically survive the dismissal of Count III. For example, if the defendants and DeLorean agreed to the conspiracy but all the overt acts in furtherance of the conspiracy were committed by DeLorean himself, defendants would still be liable for civil conspiracy.")

Abraham also argues that DWUSA must, but has not, pleaded facts to establish that he had "malice or an intent to injure" DWUSA, citing *Skipworth by Williams v. Lead Industries Ass'n*, 690 A.2d 169, 174 (Pa. 1997). Defendant's Brief, p. 13.[2] Fed.R.Civ.P. 9(b)

---

[2] Abraham mis-cites *Skipworth*, a case that was decided at the ***summary judgment stage***, not on a motion to dismiss. There the Court said "malice, i.e., an intent to injure" is essential in proof of a conspiracy, ***not*** "malice ***or*** an intent to injure."

10

("Fraud or Mistake, Conditions of Mind") says differently, providing in pertinent part, that: "Malice, intent, knowledge, and other conditions of a person's mind may be averred generally." At paragraph 110 of the Complaint, DWUSA does just that, alleging that: "Behrens, BEAR, Kearney and Abraham combined and agreed, **with malice and intent**, and without justification, to breach the fiduciary duties owed by Behrens to DWUSA." (Emphasis added.) This satisfies DWUSA's pleading obligation at this stage of the case.

In addition, however, paragraphs 58 and 59 of the Complaint allege specific facts from which Abraham's intent to injure DWUSA may be inferred. In this regard, is well-settled that circumstantial evidence is sufficient to support a civil conspiracy claim. *E.g., Baker v. Rangos*, 324 A.2d 498, 506 (Pa. Super. Ct. 1974); *RDK Truck Sales and Serv., Inc. v. Mack Trucks, Inc.*, 2009 U.S. Dist. Lexis 43245, *30 (E.D. Pa. May 19, 2009); *see also CBS Corp. v. FCC*, 663 F.3d 122, 175 n. 21 (3d Cir. 2011) ("The law has traditionally allowed the use of objective evidence to prove a party's subjective state of mind.")

### 6. DWUSA States Claims Against Abraham in Count IV of the Complaint, for Aiding and Abetting Breach of the License, and Count V of the Complaint, for Civil Conspiracy to Breach the License

Abraham argues that Counts IV and V of the Complaint, for aiding and abetting and conspiracy to breach the License, respectively, should be dismissed because there is no underlying tort claim to support them. Put another way, Abraham argues that one or more defendants cannot conspire to breach a contract (or aid and abet a breach of contract), as a matter of law.

11

Abraham is wrong on the law. For example, in *Ferrer v. Trustees. of the Univ. of Pa.*, 825 591 (Pa. 2002), the plaintiff medical researcher obtained a judgment in his favor for breach of contract and conspiracy to breach his employment agreement against the university trustees and various administrators. On appeal, the Superior Court remanded the matter, determining that judgment should have been entered for the defendants (on the ground that the researcher did not sustain compensable damages). Pennsylvania's Supreme Court reversed and reinstated the verdict. In *The Great Atlantic & Pacific Tea Co.*, 356 Pa. 265, 52 a.2d 24, cert. denied, 332 U.S. 778 (1947), the sole claim alleged was a conspiracy having for its object a breach of contract between defendant, A&P, and some independent haulers. The Pennsylvania Supreme Court affirmed judgments in favor of the defendants based upon a failure of the plaintiff's proofs as to the conspiracy, but did not question that such a claim could be maintained as a matter of law. *See also Solomon Edwards Group, LLC v. Voicenet Corp.*, 2001 Phila. Ct. Com. Pl. LEXIS 66, 11-12 (Philadelphia C.C.P. March 29, 2001) (overruling preliminary objection to claim alleging conspiracy to breach contract, noting that breach of contract and tortious interference claims had been properly pleaded).[3]

---

[3] As a final matter, since Count IV of the Complaint, for aiding and abetting breach of the License, is not materially different than Count III for tortious interference, in the event that the Court denies the Motion as to Count III, DWUSA has no objection to the Motion being granted as to Count IV. Otherwise, the authority cited in this Section 6 supports the proposition that such a claim need not have an underlying tort as its basis and can be maintained in connection with a contractual breach.

Moreover, it is well-settled that patent infringement is tortious conduct. *E.g., Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 2014 U.S. Dist. Lexis 43042, *64 (W.D. Pa. March 31, 2014); *Shah v. Harristown Dev. Corp.*, 2013 U.S. Dist. Lexis 174354, *32 (M.D. Pa. Dec. 13, 2013); *Csb-System Int'l Inc. v. SAP Am., Inc.*, 2012 U.S. Dist. Lexis 60909, *21-22 (E.D. Pa. April 30, 2012). Since, under the circumstances of this case, the breach of the License is inextricably intertwined with infringement of the 494 Patent, assuming, *arguendo*, that a civil conspiracy claim (or a claim for aiding and abetting) must be founded upon underlying tortious conduct, Counts IV and V each have such a foundation.

## CONCLUSION

Based upon the foregoing facts and authorities, DWUSA respectfully requests that he Court deny the Motion in its entirety. As a final matter, in the event the Court were to deem the factual allegations of the Complaint to be insufficiently specific to support any of the claims asserted in the Complaint, DWUSA respectfully requests the opportunity to amend the Complaint to cure any such deficiency.

Respectfully submitted,

**BRAVERMAN KASKEY, P.C.**

BY:    */s/ Peter J. Leyh*
       David L. Braverman, Esquire
       braver@braverlaw.com
       Peter J. Leyh, Esquire
       pleyh@braverlaw.com
       One Liberty Place, 56th Floor
       1650 Market Street
       Philadelphia, PA 19103

                                                  (215) 575-3800 (telephone)
                                                  (215) 575-3801 (facsimile)

                                                  *Attorneys for Plaintiff Duckweed USA, Inc.*

Dated: December 3, 2015