**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
                                                  :
DUCKWEED, USA, INC.,                              :          CIVIL ACTION
                                                  :
                              Plaintiff,          :
                                                  :
                    v.                            :          No.  15-5387
                                                  :
RUDOLPH BEHRENS,                                  :
EDWARD ABRAHAM,                                   :
JOSEPH KEARNEY and                                :
B.E.A.R. OCEANICS,                                :
                                                  :
                         Defendants.              :
———————————————————————:

<u>**MEMORANDUM**</u>

**ROBERT F. KELLY, Sr. J.**                                    **MARCH  30, 2016**

      Presently before this Court is Defendant, Edward Abraham's ("Abraham") Motion to

Dismiss, the Response in Opposition filed by Plaintiff, Duckweed, USA, Inc. ("Duckweed"), and

the supplemental briefing submitted by the parties regarding Duckweed's standing to sue for

patent infringement.  For the reasons set forth below, Abraham's Motion is granted in part and

denied in part.

**I.**      <u>**PROCEDURAL HISTORY**</u>

      On September 30, 2015, Duckweed initiated this action by filing a Complaint

against Rudolph Behrens ("Behrens"), Abraham, Joseph Kearney ("Kearney"), and B.E.A.R.

Oceanics ("BEAR") (collectively referred to as "Defendants").  Duckweed's Complaint sets

forth the following causes of action: Patent Infringement (Count I) against Defendants; Breach of

License Agreement (Count II) against Behrens; Tortious Interference with Existing Contract

(Count III) against Kearney and Abraham; Aiding and Abetting Breach of License Agreement

(Count IV) against Kearney and Abraham; Civil Conspiracy to Breach the License Agreement (Count V) against Defendants; Breach of Fiduciary Duty (Count VI) against Behrens; Aiding and Abetting Breach of Fiduciary Duty (Count VII) against Kearney and Abraham; Civil Conspiracy to Breach the License Agreement (Count VIII) against Defendants;[1] and Promissory Estoppel (Count IX) against Behrens.[2]  See Compl.

On or about October 7, 2015, Plaintiff filed a Motion for Preliminary Injunction against Defendants.[3]  (Doc. No. 7.)  Default was entered against Behrens and BEAR on October 21, 2015, and Kearney on January 18, 2016.  On November 10, 2015, Abraham moved to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), and Duckweed filed a response in opposition on December 4, 2015.[4]  (Doc. Nos. 15, 18.)  We raised the issue of Duckweed's standing to bring a claim for patent infringement on its own, and ordered supplemental briefing.  (Doc. No. 19.)  Both parties filed supplemental briefing, which is part of the record reviewed, with Duckweed asserting that it has standing and Abraham arguing that it does not.   (Doc. Nos. 22, 23.)

---

[1]Duckweed states that "Count VIII was incorrectly captioned Civil Conspiracy to Breach the License Agreement. As Abraham acknowledges, the allegations in Count VIII make clear that the claim is for conspiracy to breach fiduciary duties." (Pl.'s Mem. Law Opp'n Def.'s Mot. to Dismiss at 9 n.1.)  For clarity, we will refer to Count VIII as a claim for conspiracy to breach fiduciary duties throughout this Memorandum Opinion.

[2]The Court has diversity jurisdiction over this action since the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.  The parties agree that Pennsylvania law applies to the state law claims.  See Redmond v. ACE Am. Ins. Co., No. 14–3864, 2015 WL 3514690, at *1 n.2 (3d Cir. June 5, 2015) (declining to undertake a choice of law analysis since both parties agreed that New York law applied).

[3]A Preliminary Injunction hearing was set for October 27, 2015; however, the Court was informed by Duckweed that it was unnecessary.  (Doc. No. 9.)  Duckweed's Petition for Preliminary Injunction remains outstanding.

[4]To decide a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and where appropriate and necessary "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Although Duckweed has included documents outside of those permissible to be considered when deciding a motion to dismiss, we did not consider evidence outside of the pleadings, and we decline to convert Abraham's Motion to Dismiss into one for summary judgment because we find that conversion is not appropriate at this juncture.

II.   **FACTS**

Duckweed's Complaint contains a multitude of factual allegations against the four named Defendants.  In the interest of efficiency, we will primarily focus upon the factual allegations contained in the Complaint pertaining to Abraham.  In November 2012, Duckweed was allegedly formed to develop and market emerging aquatic biomass clean-energy technologies.  Compl. ¶ 14.  On July 6, 2010, the patent-in-suit, United States Patent No. 7,750,494 BI (the "494 Patent"), titled "Systems and Vessels for Producing Hydrocarbons and/or Water, and Methods for Same," was issued by the United States Patent and Trademark Office.  Id. ¶ 11. Behrens is listed in the 494 Patent as an "inventor" and as the "assignee."  Id. ¶ 27.  Certain processes and technologies covered in the Patent (which Duckweed calls Hydrodynamic Reformation, or "HDR") can produce a cost effective, clean, and renewable petroleum oil substitute from algae, waste water or vegetable oils.  Id. ¶¶ 14-16.  Through a document entitled "Resolution," which was signed by Behrens, Michael Rigolizzo ("Rigolizzo"), Duckweed's President and CEO, and Stephany Longo ("Longo"), Duckweed's Vice-President and Secretary, Duckweed alleges that Behrens gave it "an exclusive license to develop, market and license commercial synfuel feedstock facility(s), utilizing the patented processes and technologies in the 494 Patent."  Id.

¶¶ 28-29.

According to the Complaint, since Duckweed obtained the license, its primary focus has been to develop and construct a commercial synfuel feedstock facility at a site in Winslow Township, New Jersey (the "Winslow Project"), and a facility at the Sparta Waste Water Treatment facility in Sparta, Georgia (the "Sparta Project") featuring the HDR process.  Id. ¶ 31. In addition, Duckweed  developed a relationship with Rutgers University's "Aquaculture

Innovation Center for Environment and Natural Resources," in Cape May, New Jersey, and for the past year has been developing and constructing a demonstration site at the Rutgers Center to show the HDR process in continuous operation to investors (the "Rutgers Project").  Id.  The Rutgers Project is critical to Duckweed's efforts to attract the investment funding that is needed to construct and operate the Winslow and Sparta Projects.  Id.

Duckweed began to lay out the demonstration site for the Rutgers Project and push for funding in January 2015.  Id. ¶ 45.  Rigolizzo was introduced to Kearney, who informed Rigolizzo that he had many contacts in the investing community and could assist with Duckweed attracting funding.  Id. ¶ 46.  Kearney set up a meeting between Rigolizzo and Abraham, the result of which was that, in March, 2015, Abraham (through his company EPA Marketing Management, Inc.) loaned Duckweed $45,500 to "construct[] a prototype of the Linear Venturi Kinetic Nozzle Synfuel Production System" for the Rutgers Project.  Id. ¶ 49.  Duckweed went to work immediately and, by June 17, 2015, the demonstration units for the Rutgers Project were constructed and ready to be made operational.  Id. ¶ 51.  All that was needed was for Behrens to deliver critical pump/nozzle assemblies and the  "artificial intelligence" needed to operate them. Id.

On June 19, 2015, Rigolizzo and Longo each received an email from Behrens stating that he was "withdrawing from [Duckweed]" and "nullifying" the license.  Id. ¶ 54.  Behrens went on to claim that BEAR, not Duckweed, had made the agreement with Rutgers to demonstrate its (BEAR's) "patented technologies" - i.e., the technologies that Duckweed has an exclusive license to commercialize - to "the world."  Id. ¶ 54.  Upon information and belief, Abraham and Kearney, together with Behrens, are principals in BEAR.  Id. ¶ 6.

Following Behrens' email, Behrens and Kearney (acting on his own behalf and on behalf of Abraham) each communicated on multiple occasions by email and by telephone with Duckweed investors James McMonagle and Frank Marx to, among other things: (i) disparage Rigolizzo, calling him a liar and a thief, (ii) make clear that, together with Abraham, they would install the pump and nozzle assemblies and artificial intelligence - which Behrens has withheld and refused to deliver to Duckweed - in order to make the Rutgers site operational and present it "to the world" as a BEAR project; (iii) make clear that, together with Abraham, they intended to pursue the Sparta, Georgia opportunity through BEAR once the Rutgers site was operational; and (iv) solicit Duckweed's investors away from Duckweed.  Id. ¶ 58.  Moreover, on September 4, 2015, Rigolizzo received a call from Abraham, who confirmed the alliance between himself and Behrens by bragging that the algae tanks at the Rutgers site had been filled and were growing algae, that the LVKN pump and nozzle assemblies were about to be installed, and that the demonstration units would then be fully operational.  Id. ¶ 59.

## III.   DISCUSSION

### A.  Standing

In addition to Article III standing, Duckweed must also possess standing as defined by § 281 of the Patent Act.[5]  See Alps S., LLC v. Ohio Willow Wood Co., 787 F.3d 1379, 1382 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 897 (2016).  "Under 35 U.S.C. § 281, a 'patentee' has standing to pursue a patent infringement action."  Id. (citing H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir. 2002)).  "The word 'patentee' is not limited to the person to whom the patent issued, but also includes 'successors in title to the patentee.'"  Id. (citing 35 U.S.C. § 100(d)).

---

[5]"Standing must be present at the time the suit is brought."  Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975–76 (Fed. Cir. 2005).  The party "bringing the action bears the burden of establishing that it has standing."  Id. at 976.

"In addition to the patent owner, [Federal Circuit] case law provides that '[a]n exclusive licensee has standing to sue in its own name, without joining the patent holder where all substantial rights in the patent are transferred.'" Id. (quoting Int'l Gamco, Inc. v. Multimedia Games, Inc., 504 F.3d 1273, 1276 (Fed. Cir. 2007)). In the case where a patent owner transfers all substantial rights, the transferee is treated as the patentee and has standing to sue in its own name. Id. (citing Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007); Int'l Gamco, 504 F.3d at 1276 (observing that a licensee with all substantial rights "is effectively an assignee"); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1250 (Fed. Cir. 2000) (explaining that an entity "that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.")) "If, however, the transferee or licensee does not hold all substantial rights, it may 'sue third parties only as a co-plaintiff with the patentee.'" Id. at 1382-83 (quoting Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001)).

"At least one exception to that rule exists, however: an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when 'necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting Waterman v. Mackenzie, 138 U.S. 252, 255 (1891); citing Littlefield v. Perry, 88 U.S. (21 Wall.) 205, 223 (1874) (holding that plaintiff was an assignee, but stating that even if he were an exclusive licensee, he could bring suit in his own name, because the patentee was the infringer); Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1030 (Fed. Cir. 1995)). "On the other hand, a bare licensee has no standing at all." Id. (citing Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1552 (Fed. Cir. 1995) (bare licensees have no standing); Ortho, 52 F.3d at 1034).

"Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant."  Id. (citing Ortho, 52 F.3d at 1033–34).  "The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement."  Id. (citing Ortho, 52 F.3d at 1032).  "Because patent rights are rights to 'exclude others,' see 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that 'others shall be excluded from practicing the invention' within the field covered by the license."  Id. (quoting Rite–Hite, 56 F.3d at 1552).  "Put another way, an exclusive license is 'a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.'"  Id. (quoting W. Elec. Co. v. Pacent Reproducer Corp., 42 F.2d 116, 118 (2d Cir. 1930)).  Therefore, licensees under that patent are not exclusive licensees if a patentee-licensor is free to grant licenses to others.  Id.

Here, Behrens is the undisputed owner of the 494 Patent, and he has not made any assignment.  Relying upon the Resolution, Duckweed asserts that it is an exclusive licensee with all substantial rights under the 494 Patent and, therefore, has standing to sue for patent infringement.  We conclude that Duckweed does not have an exclusive license with all substantial rights under the 494 Patent.  Behrens has retained a significant amount of interest in the 494 Patent and has clearly not relinquished all substantial rights under the Patent.  Invoking the exception outlined above, Duckweed asserts that it has standing to sue in his own name as an exclusive licensee to prevent an absolute failure of justice since Behrens, who is the patentee, is the alleged infringer, and cannot sue himself.  Abraham argues that Duckweed lacks standing because the Resolution did not grant Duckweed an exclusive license, but only granted a bare

license.  Based upon all of the arguments, and the Resolution itself, we conclude that Duckweed

has standing to sue because it falls under the exception outlined above.

The following two sections of the Resolution are relevant to the determination of whether

Duckweed was granted an exclusive license or a bare license:

> 7.)    It was further agreed that Rudolph Behrens will contribute his professional expertise and patented process of turning aquatic biomass into vegetable oil that can be sold to refineries to make Biodiesel fuel and related products, referred to as 'SF-1: Land-Based Synfuel Production System.'

> 8.)    It was further agreed that Duckweed USA will exclusively develop, market and license commercial synfuel feedstock facility(s), utilizing the 'SF-1: Land-Based Synfuel Production System.'

See Compl., Ex. B (Resolution) ¶¶ 7, 8.  Based upon the Resolution, Abraham asserts that, "at

best, a bare license was conveyed and rights to manufacture and build facilities."  (See Def.'s

Suppl Br. on Standing at 8.)  However, we find that the Resolution conveys more.

It is clear from the Resolution that Duckweed was granted the exclusive right to develop,

market and license commercial synfuel feedstock facility(s) utilizing the SF-1:Land-Based

Synfuel Production System.  See Compl., Ex. B ¶ 8.  Significantly, Behrens gave Duckweed the

exclusive right to license commercial synfuel feedstock facility(s) utilizing the SF-1:Land-Based

Synfuel Production System.  Id.  "To qualify as an exclusive license, an agreement must clearly

manifest the patentee's promise to refrain from granting anyone else a license in the area of

exclusivity."  Textile, 134 F.3d at 1484.  The Resolution between Behrens and Duckweed clearly

manifests a promise by Behrens to do so.  Not only does the Resolution clearly manifest

Behrens' promise to refrain from granting anyone else a license in the area of exclusivity, but it

gives Duckweed itself the exclusive right to license commercial synfuel feedstock facility(s)

utilizing the SF-1:Land-Based Synfuel Production System.  As discussed, licensees under a

patent are not exclusive licensees if a patentee-licensor is free to grant licenses to others.  See

supra p. 7 (citing <u>Textile</u>, 134 F.3d at 1484).  This is clearly not the case here as Duckweed is granted the exclusive right to grant licenses to others, not Behrens.

Not only did Duckweed receive the right to practice the invention within a given territory, but, significantly, it also received Behrens' explicit promise that others shall be excluded from practicing the invention within that territory as well.  Since Duckweed received an express promise of exclusivity under the patent, i.e., the right to exclude others from making, using, or selling the patented invention, it has received an exclusive license.  It has received more than Behrens' promise that it will not be sued for infringement, i.e., a "bare license." Accordingly, we find that Duckweed has an exclusive license and its case falls under the exception allowing an exclusive licensee that does not have all substantial rights to have standing to sue in its own name when "necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself."  <u>See</u> <u>Textile</u>, 134 F.3d at 1484 (citing <u>Waterman</u>, 138 U.S. at 255; <u>Littlefield</u>, 88 U.S. (21 Wall.) at 223).  Consequently, Duckweed has standing to sue for patent infringement of the 494 Patent.

### B. <u>Motion To Dismiss</u>

#### 1. <u>*Count V – Civil Conspiracy to Breach License Agreement*</u>

In Pennsylvania, "a civil conspiracy claim . . . requires an underlying tort."  <u>Alpart v. Gen. Land Partners</u>, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (citing <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 405 (3d Cir. 2000) (explaining that, as a predicate to liability for civil conspiracy, a complaint must allege a distinct underlying tort)).  "[A] breach of contract, without more, is not a tort."  <u>Id.</u> at p. 507 n.18 (citing <u>Winsor Sec., Inc. v. Hartford Life Ins. Co.</u>, 986 F.2d 655, 664 (3d Cir. 1993)).  "Because a claim for civil conspiracy can only exist with 'a finding that the underlying tort has occurred,' <u>Boyanowski</u>, 215 F.3d at 405, the claim for

civil conspiracy cannot be based on a breach of contract." Id. Thus, Duckweed's claim of civil conspiracy based upon the alleged breach of the license agreement is dismissed.[6]

      2. *Remaining Counts*

When reviewing a Complaint for purposes of a Motion to Dismiss, the Court must "accept all factual allegations as true [and] construe the Complaint in the light most favorable to the Plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 83 (3d Cir. 2011)). "A motion to dismiss pursuant to 12(b)(6) may be granted 'only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility.'" Id. (quoting Warren, 643 F.3 at 84).

The majority of Abraham's arguments for dismissal center upon the assertion that Duckweed merely cites a series of conclusory statements devoid of any factual support. (See Def.'s Mem. Law Support Mot. to Dismiss.) However, we note that Duckweed has, indeed, included factual support within its Complaint to support its claims against Abraham. Specifically, we note that Duckweed asserts that, upon information and belief, Abraham and Kearney, together with Behrens, are principals in BEAR. Compl. ¶ 6. The Complaint further alleges that, on June 19, 2015, Rigolizzo and Longo each received an email from Behrens stating that he was "withdrawing from [Duckweed]" and "nullifying" the license. Id. ¶ 54. Behrens went on to claim that BEAR, not Duckweed, had made the agreement with Rutgers to

---

[6]Duckweed asserts that "it is well-settled that patent infringement is tortious conduct." (Pl.'s Resp. Opp'n Def.'s Mot. to Dismiss at 13.) It asserts that its civil conspiracy claim survives dismissal because "the breach of the License is inextricably intertwined with infringement of the 494 Patent, assuming, arguendo, that a civil conspiracy claim . . . must be founded upon underlying tortious conduct, Count . . . V. . . [has] such foundation." (Id.) We only address what is before us contained within the Complaint, which is a civil conspiracy claim based upon a breach of license agreement. As discussed above, pursuant to Pennsylvania law, we will dismiss Count V for failure to state a claim.

demonstrate its (BEAR's) "patented technologies" - i.e., the technologies that Duckweed has an exclusive license to commercialize - to "the world."  Id. ¶ 54.

Duckweed further alleges in its Complaint that after Behrens' email, Behrens and Kearney (acting on his own behalf and on behalf of Abraham) each communicated on multiple occasions by email and by telephone with Duckweed investors James McMonagle and Frank Marx to, among other  things: (i) disparage Rigolizzo, calling him a liar and a thief, (ii) make clear that, together with Abraham, they would install the pump and nozzle assemblies and artificial intelligence - which Behrens has withheld and refused to deliver to Duckweed - in order to make the Rutgers site operational and present it "to the world" as a BEAR project; (iii) make clear that, together with Abraham, they intended to pursue the Sparta, Georgia opportunity through BEAR once the Rutgers site was operational; and (iv) solicit Duckweed's investors away from Duckweed.  Id. ¶ 58.  Additionally, the Complaint alleges that, on September 4, 2015, Rigolizzo received a call from Abraham, who confirmed the alliance between himself and Behrens by bragging that the algae tanks at the Rutgers site had been filled and were growing algae, that the LVKN pump and nozzle assemblies were about to be installed, and that the demonstration units would then be fully operational.  Id. ¶ 59.

Accepting all of the pertinent allegations in the Complaint as true, and viewing them in the light most favorable to Duckweed, it is clear that Duckweed has set forth factual averments that Abraham has taken more action in this case than solely providing Duckweed with funding per their agreement.  As such, at this early stage of the litigation, Duckweed's claims against Abraham; namely, Patent Infringement (Count I); Tortious Interference with Existing Contract (Count III); Aiding and Abetting Breach of Fiduciary Duty (Count VII); and  Civil Conspiracy to

Breach Fiduciary Duties (Count VIII) have facial plausibility.  Consequently, Abraham's Motion to Dismiss is denied regarding the aforementioned claims.

Regarding its claim for Aiding and Abetting Breach of License Agreement (Count IV), Duckweed does not object its dismissal "since Count IV of the Complaint, for aiding and abetting breach of the License, is not materially different than Count III."  (Pl.'s Resp. Opp'n Def.'s Mot. to Dismiss at 12 n.3.)  As a result, we grant Abraham's Motion to Dismiss regarding Count IV - Aiding and Abetting Breach of License Agreement.  It is dismissed from the Complaint.

## IV.   CONCLUSION

Duckweed has standing to bring Count I – Patent Infringement.  Duckweed's civil conspiracy claim based upon the alleged breach of the license agreement in Count V is dismissed for failure to state a claim.  At this early stage of the litigation, the following allegations against Abraham in the Complaint have facial plausibility: Patent Infringement (Count I); Tortious Interference with Existing Contract (Count III); Aiding and Abetting Breach of Fiduciary Duty (Count VII); and Civil Conspiracy to Breach Fiduciary Duties (Count VIII).  As a result, Abraham's Motion to Dismiss these claims is denied.  However, Duckweed has no objection to the dismissal of its claim for Aiding and Abetting Breach of License Agreement (Count IV).  Therefore, we grant Abraham's Motion to Dismiss regarding Count IV - Aiding and Abetting Breach of License Agreement.

An appropriate Order follows.